[No. 10858-9-III.   Division Three.   June 2, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. LUERON CLEO WARD, *Appellant.*

---

*Gary G. McGlothlen* and *McGlothlen Law Office,* for appellant (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Eishe Kayar-MacGregor, Deputy,* for respondent.

SHIELDS, C.J. — Cocaine was found in Lueron Ward's possession during booking on an outstanding arrest warrant. After his motion to suppress was denied, he was found guilty by the court of possession of a controlled substance and sentenced within the standard range. Mr. Ward appeals; we affirm.

At approximately 5:20 a.m. on February 25, 1990, Yakima Police Officer James Giles observed Mr. Ward in the driver's seat of a parked car. The engine was running, but Mr. Ward was leaning against the steering wheel with his eyes closed. Officer Giles approached and inquired through the open driver's window whether there was a problem. Mr. Ward responded he was just trying to stay warm in his car. The officer then asked Mr. Ward for identification. Unable to locate his wallet, Mr. Ward provided his name and birth date verbally. The officer asked him to wait a minute, then walked to the back of the car and used his portable radio to run a driver's license check through the police dispatcher.

The dispatcher advised Officer Giles the City of Yakima had a warrant for Mr. Ward. Officer Giles asked Mr. Ward to step from the car, informed him of the warrant, arrested him, placed him in handcuffs, frisked him for weapons, placed him in the rear seat of the patrol car and drove to the alley behind the Yakima Police Department. A clerk brought the arrest warrant (for failing to appear on a shoplifting charge) to Officer Giles, who read it to Mr. Ward. Officer Giles testified he advised Mr. Ward bail was $325, but Mr. Ward replied he did not have that kind of money. Officer Giles then transported Mr. Ward to the county jail for booking. Mr. Ward did not deny the warrant was read to him; he testified he did not remember because he was asleep and did not awaken until they arrived at the county jail.

As part of the booking procedure, Mr. Ward was required to empty his pockets into a pass-through drawer at the booking window in the jail so the contents could be inventoried. A folded shiny paper packet was observed under the clear cellophane wrapper of Mr. Ward's cigarette package. Officer Giles, suspecting the bindle contained cocaine, opened it and observed a white powder. The substance tested positive for cocaine.

A hearing was held to determine whether suppression of the cocaine as evidence was required. The court found Mr. Ward was given an opportunity to post bail, but indicated he could not do so, and concluded the booking and inventory search were proper.

On April 11, 1990, Mr. Ward was found guilty after a bench trial on stipulated facts. Based on his offender score of 4 and an offense seriousness level of 2, the standard range sentence for this offense is 12 plus to 14 months. On May 18, 1990, the court considered Mr. Ward's motion for an exceptional sentence of 12 months, with all or part of his confinement to be served in a Teen Challenge drug rehabilitation program in Texas. Although the State did not object to the request, the court determined there were no substan-

tial and compelling circumstances, as required by RCW 9.94A.120, justifying a departure downward from the standard range. Rejecting Mr. Ward's motion, the court imposed a sentence of 12 months plus 1 day. Mr. Ward seeks review of the conviction and the sentence.

We first decide whether the cocaine Mr. Ward had on his person when he was booked into Yakima County Jail on a misdemeanor warrant should have been suppressed as the fruit of an illegal inventory search. Mr. Ward contends the State violated RCW 10.31.030[1] by not giving him an opportunity to post bail and avoid the inventory search required for booking. He argues if the inventory search was not lawful the cocaine should have been suppressed, citing *State v. Smith*, 56 Wn. App. 145, 783 P.2d 95 (1989), *review denied*, 114 Wn.2d 1019 (1990).

Mr. Ward's reliance on *State v. Smith, supra,* is misplaced. In *Smith*, at 150, the court held the police officer violated RCW 10.31.030 by not informing Ms. Smith of her right to post bail *before* her purse was searched. That was not the case with Mr. Ward. Officer Giles read him the warrant, informed him bail was $325, and was told Mr. Ward did not have that kind of money.[2] Mr. Ward acknowledged he was familiar with the procedure for obtaining bail from a bondsman and knew he had a right to post bail if he could do so, but claimed he did not wake up enough to assert his rights until after the cocaine was found.

■■ Although this court makes an independent evaluation of the evidence presented at a suppression hearing, deference is given to the trial court's determination of credibility. *State v. Mennegar*, 114 Wn.2d 304, 309-10, 787 P.2d 1347 (1990). The court's finding Mr. Ward was given an

---

[1]RCW 10.31.030 provides, in part: "That any officer making an arrest under this section shall, if the person arrested wishes to deposit bail, take such person directly and without delay before a judge or before an officer authorized to take the recognizance and justify and approve the bail, including the deposit of a sum of money equal to bail. Bail shall be the amount fixed by the warrant."

[2]Mr. Ward had only 16 cents on his person during the inventory search.

opportunity to post bail is supported by substantial evidence. The inventory search of Mr. Ward's person, conducted in accordance with established procedures before booking him, was a reasonable, valid search pursuant to a lawful custodial arrest. *Illinois v. Lafayette*, 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605 (1983); *see also Smith*, at 150; *State v. Garcia*, 35 Wn. App. 174, 176-77, 665 P.2d 1381, *review denied*, 100 Wn.2d 1019 (1983); 2 W. LaFave, *Search and Seizure* § 5.3(a), at 481 (2d ed. 1987). There was no error.[3]

We next decide whether the court imposed a sentence within the presumptive range under a mistaken belief it lacked the authority to grant Mr. Ward's motion for an exceptional sentence below it. Mr. Ward acknowledges a sentence within the standard range may not be appealed; however, he contends *State v. Bernhard*, 108 Wn.2d 527, 535, 741 P.2d 1 (1987), *overruled in part on other grounds in State v. Shove*, 113 Wn.2d 83, 776 P.2d 132 (1989) gives the sentencing judge authority to impose the exceptional sentence he requested, a drug rehabilitation program in Texas.

*Bernhard* does not help Mr. Ward, because it does not apply to felony sentences of more than 1 year. Thus, he cannot rely on the *Bernhard* ruling pertaining to the limited discretion of sentencing judges to select special detention facilities for felons sentenced to 1 year or less.

The Sentencing Reform Act of 1981, RCW 9.94A.210(1), provides in pertinent part: "A sentence within the standard range for the offense shall not be appealed." The Supreme Court has interpreted that provision as precluding appellate review of challenges to the *amount of time* imposed when the time is within the standard range. *State v. Ammons*, 105 Wn.2d 175, 182, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986). The court upheld the constitutionality of the provision, explaining:

---

[3]Mr. Ward further contends the Yakima County Jail booking policy is illegal because he would have been subjected to the search and inventory procedure even if he had cash in hand for his bail. We do not decide this issue.

The Legislature by establishing presumptive sentence ranges has structured the trial court's discretion. When the sentence given is within the presumptive sentence range then as a matter of law there can be no abuse of discretion and there is no right to appeal that aspect.

*Ammons*, at 182-83. Mr. Ward cannot appeal the length of his sentence; it is valid, as a matter of law. *State v. Pringle*, 83 Wn.2d 188, 517 P.2d 192 (1973), which Mr. Ward cites, does not require a different outcome. It held remanding for resentencing to correct an erroneous and legally invalid sentence does not constitute double jeopardy. *Pringle*, at 194.

We affirm Mr. Ward's conviction and sentence.

MUNSON and THOMPSON, JJ., concur.